1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL GRASSMUECK,

              Plaintiff,

     v.

JEFFREY M. BENSKY,

              Defendant.

No. C04-2016P

ORDER ON DEFENDANT'S
MOTION FOR INTERLOCUTORY
APPEAL OR CERTIFICATION TO
WASHINGTON SUPREME COURT

      This matter comes before the Court on Defendant Jeffrey M. Bensky's ("Bensky's") motion for interlocutory appeal or certification to the Washington Supreme Court.  Having reviewed all materials submitted in support of and in response to the motions, the Court hereby DENIES the Defendant's motion.  Defendant has not satisfied the criteria for an interlocutory appeal, because he has not shown there to be a substantial ground for a difference of opinion over subject matter jurisdiction or interpretation of the statute of limitations in Washington's Uniform Fraudulent Transfer Act ("UFTA").  Likewise, Defendant has not met the threshold for certification to the Washington Supreme Court, because he has not shown that local law is unsettled regarding interpretation of the UFTA's statute of limitations.

**BACKGROUND**

      On August 30, 2000, Kevin Lawrence entered into an agreement (the "Agreement") to purchase all of the assets of TBG Development, LLC ("TBGD") for $3.3 million.  One month later, on October 2, 2000, Lawrence assigned all of his rights and interests under the agreement to Znetix.  The

ORDER - 1

1   purchase of TBGD's assets was accomplished through a series of transfers to TBGD and Defendant

2   Bensky, who was the president and controlling member of TBGD.  The transfers occurred on

3   September 25 and 29, 2000 and October 2, 2000.

4          The Plaintiff now alleges that Znetix received virtually nothing of value from TBGD, Bensky,

5   and other co-Defendants, except for a few tangible assets of little value.

6          On Feburary 15, 2002, Plaintiff Michael Grassmueck ("Grassmueck") was appointed the

7   receiver of Znetix and other companies owned and run by Lawrence.  Plaintiff was directed to recover

8   assets that were owned by Znetix or purchased with Znetix assets.  To that end, Plaintiff sued

9   Defendants on September 24, 2004, alleging fraudulent conveyance and unjust enrichment on the

10  grounds that TBGD was significantly overvalued and Znetix received nothing of reasonably equivalent

11  value in return.

12         On March 4, 2005, the Court denied Defendant Bensky's motions to dismiss and transfer the

13  suit.  In particular, the order rejected Defendant's claims that (1) the Court lacks subject matter

14  jurisdiction to hear the suit, and (2) the statute of limitations on the fraudulent conveyance claim

15  expired prior to the filing of the complaint.  Defendant raised both claims again in his pursuit of an

16  interlocutory appeal or certification to the Washington Supreme Court.

17                                               **ANALYSIS**

18         I. Interlocutory Appeal

19         Defendant seeks Ninth Circuit review through an interlocutory appeal of the Court's order

20  denying his motion to dismiss.  District courts have discretion to certify interlocutory appeals under 28

21  U.S.C. § 1292(b), which lists three elements required for certification.  To certify, the district court

22  must find that the decision in question involves: (1) a controlling question of law, (2) a substantial

23  ground for a difference of opinion, and (3) the possibility that immediate appeal may speed resolution

24  of the case. 28 U.S.C. § 1292(b).  Certification should be considered far from routine in light of the

25  final-judgment rule for appeals.  Only "exceptional circumstances [will] justify a departure from the

1    basic policy of postponing appellate review until after the entry of a final judgment." Coopers &

2    Lybrand v. Livesay, 437 U.S. 463, 475 (1978). See also In re Cement Antitrust Litigation, 673 F.2d

3    1020, 1027 (9th Cir. 1982) ("[T]his circuit has recognized the congressional directive that section

4    1292(b) is to be applied sparingly and only in exceptional cases . . . ").

5           With regard to the second element, a "substantial ground for difference of opinion" does not

6    exist merely because a court is the first to rule on a particular question. FDIC v. First Nat'l Bank of

7    Waukesha,Wis. 604 F.Supp. 616, 620 (E.D. Wis. 1985) (The "mere fact that there is a lack of

8    authority on a disputed issue does not necessarily establish some substantial ground for a difference of

9    opinion under the statute.") See also Barrett v. Burt, 250 F.Supp. 904, 907 (S.D. Iowa 1966).  Nor is

10   the "substantial ground" threshold met simply because the parties disagree, or because one party takes

11   issue with the court's ruling.  Here, Defendant contends the second element is satisfied because "there

12   is a substantial dispute between the parties" on both subject matter jurisdiction and the statute of

13   limitation. (Def.'s Mot. at 4).  But as Plaintiff correctly notes, parties disagree over key issues in

14   almost any type of litigation. (Pls.'s Resp. at 4).

15          Courts have interpreted section 1292(b) to require a showing of a substantial ground for

16   difference of opinion among courts. See APCC Services, Inc. v. AT & T Corp., 297 F.Supp.2d 101,

17   107 (D.D.C. 2003) ("A substantial ground for dispute . . . exists where a court's challenged decision

18   conflicts with decisions of several other courts.")  Moreover, a court faced with a motion for

19   certification must "analyze the strength of the arguments in opposition to the challenged ruling when

20   deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute."

21   Max Daetwyler v. Meyer, 575 F.Supp. 280, 283 (E.D.Pa. 1983).

22          A. Subject matter jurisdiction

23          Defendant asserts that the Court lacks subject matter jurisdiction over Plaintiff's complaint.

24   However, as stated in the Court's order denying the Defendant's motion to dismiss, case law on this

25   point is quite clear.  Subject matter jurisdiction exists whenever a receiver brings a suit as part of his

1    duties in the court that appointed him. <u>Haile v. Henderson Nat'l Bank</u>, 657 F.2d 816, 822 (6th Cir.

2    1981).  The second suit is considered ancillary to the action in which the receiver was appointed.  "As

3    such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of

4    diversity, amount in controversy or any other factor which would normally determine jurisdiction." <u>Id.</u>

5    (citing <u>Pope v. Louisville, New Albany & Chicago R.R. Co.</u>, 173 U.S. 573 (1899); other citations

6    omitted).

7         In his reply brief, Defendant interprets <u>Pope</u> to require that an ancillary suit share the same

8    basis or type of jurisdiction as the primary suit.  Thus, he argues that this action must itself be based on

9    a federal question because the primary action in which the Plaintiff was appointed receiver, <u>Securities</u>

10   <u>and Exchange Commission v. Health Maintenance Centers, Inc.</u>, C02-153P, was based on a federal

11   question.  The Defendant cites no authority to support his reading of <u>Pope</u> or to counter <u>Haile's</u>

12   "undisputed proposition" that federal courts have ancillary subject matter jurisdiction over any suit

13   brought by a receiver in the appointing court in execution of his or her duties. <u>Haile</u>, 657 F.2d at 822.

14   Thus, Defendant has failed to establish that a substantial ground for dispute exists over subject matter

15   jurisdiction.

16        B. Statute of Limitation

17        Defendant contends that Plaintiff's suit is barred by the statute of limitations for Washington's

18   UFTA and seeks certification of an interlocutory appeal on this issue.  The fraudulent conveyance

19   statute states that a cause of action is extinguished unless the action is brought "within four years after

20   the transfer was made <u>or</u> the obligation was incurred . . . " RCW 19.40.091(a) and (b) (emphasis

21   added).

22        Despite the statute's plain language, Defendant argues that the four-year limitation period must

23   be calculated from the date of the agreement between Lawrence and TBGD (August 30, 2000), which

24   would bar the Plaintiff's attempt to obtain redress.  In essence, Defendant urges a reading of the

25   statute that requires the clock to start running from the earliest possible date, which in this case would

1   be the date the obligation was incurred.  Conversely, Plaintiff argues that the four-year period should

2   be calculated from the latest possible date, which would be the transfer of funds on September 25 and

3   29, and October 2, 2000.  Under this reading, the suit would not be barred.

4       In support of his argument, Defendant cites a South Dakota case, Estate of Juhnke v.

5   Marquardt, 623 N.W.2d 731 (S.D. 2001), that is not on point.  The case dealt with the state's

6   fraudulent transfer statute, which requires plaintiffs to establish that their claim arose before a allegedly

7   fraudulent transfer occurred.  Thus, Estate of Juhnke centered on the question of when certain notes

8   were "transferred."  Washington's fraudulent transfer statute does not require such an analysis; a

9   transaction may be fraudulent "whether the creditor's claim arose before or after the transfer was

10   made . . . " RCW 19.40.041(a).  In addition, Defendant does not dispute the dates of the transfers

11   alleged in Plaintiff's complaint.

12       Defendant also cites UFTA § 6 Official Comment (3).  This authority is inapposite as well.

13   The comment addresses when an "obligation" is incurred; it does not interpret a statute of limitations

14   with disjunctive language, as in Washington's UFTA.

15       In sum, Defendant's argument belies the statute's plain language.  He has not shown there to

16   be a substantial ground for a difference of opinion on the UFTA's limitation period.

17       II. Certification to the Washington Supreme Court

18       Defendant asks the Court to certify the following question to the Washington Supreme Court:

19   "Does the UFTA's statute of repose bar Grassmueck's claim under the circumstances presented

20   here?" (Def's Mot. at 6).  Plaintiff argues that certification would lead to undue delay, allowing

21   evidence supporting the receivership's claims to grow stale.

22       In general, certification "rests in the sound discretion of the federal court," though use of the

23   procedure is "particularly appropriate" for novel questions in unsettled areas of state law. Lehman

24   Brothers v. Schein, 416 U.S. 386, 391 (1974).  Certified questions need not raise major issues of law.

25   "Indeed, it is precisely these ordinary, repetitive contract interpretations which, because of their

1  recurring nature involving literally hundreds of contracts . . . [that] call for unequivocal resolution by

2  the final court." <u>Barnes v. Atlantic & Pacific Life Insurance Co. of America</u>, 514 F.2d 704, 706 (5th

3  Cir. 1975).

4          Under Washington law, a federal district court may certify a question to the state's highest

5  court when the answer is necessary to dispose of a case and when "local law has not been clearly

6  determined." RCW 2.60.020.  The Ninth Circuit has certified questions to the Washington Supreme

7  Court in the absence of a clear precedent or where case law supported conflicting positions.  In

8  <u>Keystone Land & Development Co. v. Xerox Corp.</u>, 353 F.3d 1093 (9th Cir. 2003), the appellate court

9  certified sua sponte the question of whether Washington law recognizes a contract to negotiate.

10  Citing conflicting case law, the court found that the issue was "not entirely settled" and resolution

11  would have "far-reaching effects." <u>Id.</u> at 1097.  In <u>Estate of Madsen v. Comm'r of Internal Revenue</u>,

12  659 F.2d 897 (9th Cir. 1981), the Ninth Circuit certified the question of whether insurance proceeds

13  are community or separate property for estate tax purposes.  The court held that certification was

14  appropriate because the question involved statutory construction and the state court's position was

15  uncertain. <u>Id.</u>  In addition, the appellate court questioned whether the case on which the lower court

16  relied was truly controlling. <u>Id.</u>

17          Here, Defendant claims that interpretation of the UFTA's statute of limitations is a "novel

18  question of first impression" (Def.'s Reply at 6). This may be true; there appears to be no Washington

19  case directly on point.  But the mere absence of authority does not mean state law is unsettled or

20  unclear.   In <u>Keystone</u>, the Ninth Circuit cited a half-dozen Washington cases that appeared to offer

21  both affirmative and negative authority on the same issue.  In <u>Estate of Madsen</u>, the relevant state

22  statute did not explicitly state whether life insurance proceeds should be included in an estate for

23  federal estate tax purposes.  By contrast, the language of the UFTA's statute of limitations leaves little

24  room for mystery: a cause of action for a fraudulent transfer or obligation must be brought "within

25  four years after the transfer was made or the obligation was incurred . . . " RCW 19.40.091(a) and (b).

ORDER - 6

1   Common sense suggests not that local law is undetermined, but rather that Washington courts have

2   had little occasion to parse the statute's meaning.

3                                                **CONCLUSION**

4           The Court DENIES Defendant's Motion for Interlocutory Appeal due to the lack of a

5   substantial ground for a difference of opinion on either subject matter jurisdiction or interpretation of

6   the Washington UFTA's statute of limitations.

7           The Court DENIES Defendant's request for certification to the Washington Supreme Court.

8   While interpretation of the UFTA's statute of limitations may be a novel issue, there is little to suggest

9   that courts are struggling with interpretation of the four-year limitation or that local law on this

10  question is unsettled.

11

12

13

14          The clerk is directed to provide copies of this order to all counsel of record.

15          Dated: May __5_, 2005

16

17          Marsha J. Pechman
            U.S. District Judge

18

19

20

21

22

23

24

25

ORDER - 7